**CONDENSER SERVICE & ENGINEER-ING CO., Inc.**

v.

**UNITED STATES.**

No. 519–52.

United States Court of Claims.

April 6, 1954.

Hyman D. Lehrich, New York City, for plaintiff.

Francis X. Daly, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

The plaintiff's petition says that it was a subcontractor with Morrow Manufacturing Company, which had a prime contract with the Department of the Army, Transportation Corps. The prime contract, made about January 24, 1944, was for the construction and delivery of 15 floating cranes, to be made according to a design prepared by Dravo Corporation, which corporation was manufacturing similar cranes for the Army. The plaintiff's subcontract with Morrow, made in April, June, and July 1944, provided that the plaintiff was to manufacture, from materials to be furnished by Morrow, and in accordance with bills of materials and drawings pre-

pared by Morrow and theretofore furnished to the plaintiff, the cranes which Morrow had contracted to deliver to the Army.

The drawings and advance bills of materials which Morrow had furnished to the plaintiff before the plaintiff entered into its subcontract with Morrow showed the construction of the cranes and the size, shape, and dimensions of each part and the number of pieces of steel of each shape. It was the custom of the steel industry that where steel was shipped from the steel mills in larger units than those which were to be ultimately used, so that it would be necessary for the user to cut the large pieces, the large pieces would be marked at the mill and the user would be furnished with a "key," a set of directions from which it could identify each larger unit and know what smaller units were to be cut from it.

Dravo prepared the necessary directions and furnished them to the Transportation Corps of the Army, but that Corps never delivered them to Morrow or to the plaintiff. Morrow ordered the steel from steel mills by orders which gave only the totals of the various types of steel desired and provided the steel mill with no identification marks to be placed on the large units to indicate what smaller parts were to be cut from each. Morrow, not having received the "key" from the Transportation Corps of the Army, did not furnish it to the plaintiff.

Steel from the mills began to arrive at the plaintiff's plant in May 1944. The plaintiff had no way of knowing what parts of the cranes which it was to build were to be cut from each large piece of steel delivered. The plaintiff complained to Morrow and requested reimbursement of the additional costs incurred and to be incurred. Morrow referred the plaintiff to the Transportation Corps.

In November 1944, the plaintiff gave notice to Morrow and to the Transporta- Corps of the Army that because of Morrow's breach of contract, and because no arrangement had been made to reimburse the plaintiff for the extra costs which it had incurred and would incur in unscrambling the confused mass of steel, it intended to cease performance of its subcontract. As a result of this notice, in December 1944, a meeting of the interested parties was held at which a representative of the Transportation Corps urged the plaintiff not to cease performance, and assured the plaintiff that it would be paid by the Government the additional costs incurred and to be incurred. The plaintiff, in reliance upon the request of this representative of the Government, proceeded to complete the performance of the contract.

Section 17 of the Contract Settlement Act of 1944, 41 U.S.C.A. § 117(a) is as follows:

"(a) Where any person has arranged to furnish or furnished to a contracting agency or to a war contractor any materials, services, or facilities related to the prosecution of the war, without a formal contract, relying in good faith upon the apparent authority of an officer or agent of a contracting agency, written or oral instructions, or any other request to proceed from a contracting agency, the contracting agency shall pay such person fair compensation therefor."

The plaintiff presented a claim to the Transportation Corps in the amount of $285,000 for alleged additional costs incurred by it. The claim was based upon Section 17 quoted above. The claim was denied. The plaintiff appealed to the Appeal Board of the Office of Contract Settlement. That Board heard evidence offered by the plaintiff and by the Transportation Corps. On April 18, 1952, the Board made a preliminary decision in which it held that the plaintiff was entitled to be compensated for extra costs incurred after December 19, 1944, the date on which it found that the representative of the Transportation Corps had promised the plaintiff that it would be compensated for its extra costs. The Board decided that the plaintiff was not

entitled to be compensated for any costs incurred before December 19, 1944, nor for any of the costs of cutting the steel, whenever incurred, nor for any additional overhead except that attributable to the extra costs incurred after December 19, 1944 and held allowable by the Board. The Board did not then determine the amount which should be awarded to the plaintiff. The hearing before the Board had been limited to the issue of liability, and no evidence had been taken as to the amount of compensation. The Board, hoping to avoid a further extensive hearing, directed that the parties negotiate as to the amount due. If they reached an agreement, the Board would enter a decision, presumably embodying the amount agreed upon. If they reached no agreement by June 15, 1952, the Board would take evidence to determine the amount of the award in accordance with the principles set forth in its opinion.

The parties negotiated. The Government negotiator sought to have the plaintiff's negotiator agree that the amount fixed by them should be final as to the plaintiff's entire claim. The plaintiff's representative insisted that the plaintiff should have the right to bring suit for the balance of its claim in the Court of Claims, as the Contract Settlement Act provided. The Government's representative sought legal advice as to whether he should insist upon his position and was advised that the sole purpose of the negotiation was to carry out the order of the Board and fix the amount due under the Board's decision. The Government lawyer who gave this advice approved the form of stipulation which the parties used in submitting their agreement to the Board. The stipulation read as follows:

"The Appeal Board of the Office of Contract Settlement having decided the above proceedings by a decision dated 18 April 1952, and

"The parties hereto having.in accordance with the terms of the said decision, negotiated as to the amount due under the said decision.

"Now, therefore, it is agreed that the amount due under the said decision is $110,000.00."

The Board thereupon entered a formal decision awarding the plaintiff $110,000.

The plaintiff did not, by entering into the negotiated agreement as to the amount due under the Board's preliminary decision, compromise and settle any part of its claim which had been denied by the Board in its preliminary decision. As to all parts of its claim that were denied by the preliminary decision, it was a party aggrieved, because the decision had been against it. Section 13 of the Contract Settlement Act of 1944, 41 U.S.C.A. § 113, provides that a war contractor aggrieved by the decision of the Appeal Board may sue on his claim in this court. This the plaintiff has done, and it had a right to do it. The Government's motion for summary judgment is denied.

It is so ordered.

JONES, Chief Judge, and WHITAKER, and LITTLETON, Judges, concur.